UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **PRESTON L. BEVERLY**, | Case Number 1:14 CV 631 |
| Plaintiff, | Judge Benita Y. Pearson |
| v. | REPORT AND RECOMMENDATION |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| Defendant. | Magistrate Judge James R. Knepp II |

### INTRODUCTION

Plaintiff Preston Beverly filed a Complaint against Defendant Commissioner of Social Security's decision to deny supplemental security income ("SSI"). The district court has jurisdiction under 42 U.S.C. 1383(c). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated March 21, 2014). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

### PROCEDURAL BACKGROUND

On October 4, 2010, Plaintiff filed for SSI benefits alleging disability since September 23, 2010. (Tr. 151). Plaintiff's claims were denied initially (Tr. 82-88) and on reconsideration (Tr. 90-96). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 97-99). On October 2, 2012, Plaintiff (through counsel) and a vocational expert ("VE") testified at a hearing after which the ALJ found Plaintiff not disabled. (Tr. 10-23; 24-55). On January 24, 2014, the Appeals Council denied Plaintiff's request for review, making the hearing decision the

final decision of the Commissioner. (Tr. 1-5); 20 C.F.R. §§ 416.1455, 416.1481. On March 21, 2014, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

*Personal and Vocational Background*

Born December 9, 1959, Plaintiff was 50 years old at the time of his alleged disability onset date. (Tr. 151). At the time of the hearing, Plaintiff was living with his step-daughter. (Tr. 33). However, on November 23, 2010, when he completed his function report, Plaintiff was living with friends. (Tr. 197). Plaintiff had completed the tenth grade[1] and had past work experience as a blast furnace operator, laborer, and metal man. (Tr. 170).

In terms of daily living, Plaintiff said he didn't do too much. (Tr. 198). After waking up, taking a shower, eating, and taking his medication, Plaintiff would watch TV all day. (Tr. 198). Plaintiff reported his friend had to help him get dressed, he needed help in and out of the tub, and he was afraid to shave because he was on so much medication, he thought he would cut himself. (Tr. 199). Plaintiff further stated that he could not prepare meals because his arms and hands were numb due to his shoulder injury and caused him to drop a lot of things. (Tr. 199). Plaintiff said he could not stand, and that although he could grocery shop, he needed to ride in a scooter and have someone assist him. (Tr. 200).

*Medical Evidence*

Plaintiff generally challenges only the ALJ's conclusions regarding his physical limitations (Doc. 16) and therefore waives any claims about the determinations of his mental impairments. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver). Accordingly, the undersigned addresses only the record evidence pertaining to Plaintiff's arguments.

---

1. Plaintiff testified at the hearing that eighth grade was his highest grade completed.

Plaintiff told his health care providers he had ongoing pain since he was hit over the head with a ladder in 2004. (Tr. 281). He was seen in the pain clinic a few years ago but stopped going because he thought he was getting better. (Tr. 281). The first record of treatment for this condition before the ALJ was on July 20, 2010, when Plaintiff presented in the emergency department of Huron Hospital complaining of severe back and neck pain. (Tr. 257). Plaintiff was a poor historian and reported having similar symptoms multiple times. (Tr. 257). Plaintiff's symptoms improved and he was discharged home with prescriptions for pain medication. (Tr. 260-61).

On September 13, 2010, Plaintiff saw Nana Gaisie, M.D., complaining of pain in his neck, back, and shoulders, as well as a headache. (Tr. 267). Plaintiff said his pain was eight on a ten-point scale and reported having numbness in his fingers as well as pain in his left foot, six on a ten-point scale. (Tr. 267). Blood work and x-rays were ordered and Plaintiff was to return for follow-up care. (Tr. 268). On October 6, 2010, an x-ray of the cervical spine revealed slight degenerative narrowing of the disk space at C5-6 and was otherwise unremarkable. (Tr. 300) An x-ray of the lumbar spine revealed well-maintained disc space with no significant vertebral pathology noted and no fracture. (Tr. 300). On October 29, 2010, Plaintiff received a lidocaine injection and was referred for physical therapy. (Tr. 275, 278).

Plaintiff started physical therapy with Lisa Niro, P.T., on November 10, 2010. (Tr. 270). Plaintiff reported needing assistance with numerous activities of daily living including cooking, self-care, grocery shopping, and cleaning. (Tr. 270). Plaintiff was alert, motivated, and cooperative, but he focused continuously on his pain and needed to be redirected frequently. (Tr. 271). Plaintiff was very tense during the evaluation and held his body in an isometric contraction, it was not clear if this was guarding from pain or resisting. (Tr. 271). Plaintiff's gait

was unsteady, he had decreased knee flexion bilaterally, and Ms. Niro had difficulty assessing his full range of motion and strength because he was tense. (Tr. 271). Ms. Niro noted that Plaintiff seemed to be hypersensitive to pain because his muscle definition and appearance of being physically fit did not coincide with the pain level and decreased functioning he was reporting. (Tr. 271).

On January 21, 2011, Plaintiff saw Shalin Shakya, M.D., for a follow-up visit. (Tr. 416). Plaintiff reported his left shoulder pain was ten on a ten-point scale and that the injection had only helped for a few days. (Tr. 416). Plaintiff's pain was aggravated by even minimal movement or pressure, and he needed to ambulate with a cane because his knee gave out frequently. (Tr. 416).

Plaintiff was consistent with physical therapy and was discharged to continue with a home exercise plan on March 15, 2011. (Tr. 210-11). Plaintiff experienced some decrease in pain following therapy although his pain was still ten on a ten-point scale in his left shoulder. (Tr. 310). Plaintiff's physical therapist noted that he was very focused on his pain. (Tr. 310). Plaintiff reported improvement in his overall activities of daily living following therapy. (Tr. 311). Plaintiff reported he could only lift light weights, his walking was limited to ¼ a mile at a time, his sitting and standing were limited to a half hour at a time, he slept less than four hours a night, and he was able to care for himself although this increased his pain. (Tr. 311). Plaintiff could travel but only up to an hour and could perform basic homemaking and job duties but pain prevented him from performing stressful activities like lifting or vacuuming. (Tr. 311).

On August 29, 2011, Plaintiff presented to the Emergency Department at University Hospitals with a chief complaint of shoulder and neck pain that had gotten worse over the last three months. (Tr. 484). On examination, Plaintiff was in no apparent distress but had a

decreased range of motion in flexion, extension, and rotation of the cervical spine along with tenderness to palpation. (Tr. 485). Plaintiff further had a decreased range of motion in his shoulders and tenderness to palpation in his right shoulder. (Tr. 485). Plaintiff was discharged home with prescriptions for Percocet and tramadol and instructions to follow up with orthopedics. (Tr. 486). Plaintiff returned to the Emergency Department for his pain, on October 21, 2011, where he was diagnosed with a shoulder strain and given instructions for use of a sling, and told to apply ice and take pain medication. (Tr. 502-510).

On November 11, 2011, Plaintiff followed up with Howard Smith, M.D. (Tr. 511). Plaintiff reported increased shoulder pain but the pain in his right shoulder was relieved by Percocet and tramadol and that his left shoulder pain was on movement only, causing a decreased range of motion. (Tr. 513). Plaintiff received a lidocaine injection in his right shoulder, was prescribed pain medications, and was referred to pain management. (Tr. 514-15).

A January 2012 MRI revealed stable, mild degenerative changes, without significant central or foraminal narrowing or suspicious enhancement of the lumbar spine. (Tr. 700). An MRI of the cervical spine was unremarkable. (Tr. 700).

On January 27, 2012, Plaintiff saw Michael Schaefer, M.D., at the orthopedic clinic for his shoulder pain. (Tr. 531). On examination, Plaintiff's right shoulder had pronounced scapular hiking, end range pain, and positive impingement; and his shoulder muscle use was limited by pain but there was no underlying atrophy. (Tr. 532). Plaintiff's left shoulder had mildly reduced external and internal rotation, and Dr. Schaefer observed inconsistent guarding during impingement testing. (Tr. 532). Plaintiff's range of motion in his cervical spine was moderately reduced. (Tr. 532).

5

Plaintiff returned to Dr. Schaefer on February 2, 2012 with continued pain complaints, including mild left shoulder pain. (Tr. 528). Dr. Schafer encouraged physical therapy and prescribed ten more Percocet tablets but declined to prescribe more because he thought Plaintiff's pain could be better managed by other means. (Tr. 528). Dr. Schaffer noted Plaintiff had tested positive for marijuana multiple times and one time tested positive for cocaine. (Tr. 528). He declined to complete Plaintiff's disability paperwork because he did not believe there was enough objective evidence to support disability. (Tr. 528).

An x-ray of the cervical spine on March 31, 2012, revealed mild straightening of the normal cervical lordosis and mild degenerative changes with small endplate osteophytes at C5 and C6. (Tr. 570). Plaintiff's vertebral height was normal and disc spaces were maintained. (Tr. 570).

On April 5, 2012, Plaintiff returned to Dr. Schaffer. (Tr. 566). Plaintiff continued to have a limited, painful range of motion. (Tr. 566). Dr. Schaffer administered a right shoulder injection and encouraged physical therapy. (Tr. 566).

An MRI of the right shoulder on July 30, 2012 showed some degenerative changes and revealed tendinosis. (Tr. 568). On July 31, 2012, Plaintiff saw MyDhil Yenigalla, P.T., D.P.T., and reported worsening pain, numerous near falls and use of a cane. (Tr. 721). The physical therapist noted Plaintiff would benefit from physical therapy but his pain tolerance was very poor. (Tr. 724).

*ALJ Decision*

On November 6, 2012, the ALJ found Plaintiff had the severe impairments of degenerative disc disease, adhesive capsulitis of the right shoulder, a non-specific cognitive disorder, and depression but that these impairments did not meet or equal a listing. (Tr. 15, 19).

6

The ALJ then found Plaintiff had the RFC to perform light work with the additional limitations that he could not push or pull with his dominant left arm or reach overhead with his non-dominant right arm; he could not climb ladders, ropes, or scaffolds; he could occasionally climb a ramp or stairs or reach overhead with his left arm; he could frequently stoop and crawl; he was moderately limited in his ability to accept instruction and criticism from supervisors; he was moderately limited in his ability to work with co-workers and the public without distracting them or exhibiting behavioral extremes; he was moderately limited in his ability to remember and carry out detail instructions, work at a production rate pace, be punctual, take normal breaks, and respond appropriately to work pressures and adapt to change in the work setting. (Tr. 16).

Next, the ALJ found, based on VE testimony that Plaintiff could perform work as a park attendant, courier clerk, or a garment bagger. (Tr. 19). Therefore, he was not disabled.

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court

cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.*

Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

In his sole assignment of error, Plaintiff argues the ALJ's RFC findings are not supported by substantial evidence. (Doc. 16, at 6). Plaintiff contends contrary to the ALJ's finding that he is capable of light work, he is only capable of performing sedentary work. (Doc. 16, at 7).

*RFC Findings*

A claimant's RFC is an assessment of "the most he can still do despite his limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. An ALJ must also consider and weigh medical opinions. § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. The Court may not "try the case de novo, nor resolve conflicts in evidence". *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

>Light work is defined as:
>
>Work involve[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

§ 416.967(b).

Plaintiff argues because degenerative disc disease in his low back rendered him incapable of standing for more than a few minutes at a time, he required a cane to ambulate, and was at high risk of falling, substantial evidence does not support a finding that he was capable of performing light work. (Doc. 16, at 7). Plaintiff does not cite to any objective medical demonstrating he required these restrictions. (Doc. 16, at 6-7). However, Plaintiff did report he was unable to stand long enough to get groceries, needed assistance with everyday tasks, and required the use of a cane. (Tr. 199-200, 721).

While a claimant's own statements about the severity of his symptoms can support a claim for disability, there must also be objective medical evidence in the record of an underlying medical condition. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

The ALJ found Plaintiff's statements regarding the severity of his symptoms to be less than credible to the extent they were inconsistent with the RFC assessment. (Tr. 17). In so finding, the ALJ noted that objective medical evidence did not support Plaintiff's pain complaints as his MRIs and X-Rays displayed only mild degenerative changes with otherwise normal findings. (Tr. 17, 570, 700). The ALJ considered that Dr. Schaefer, Plaintiff's treating physician, had refused to fill out Plaintiff's disability paperwork because he did not believe objective medical evidence supported a finding of disability. (Tr. 17, 528). The ALJ noted that Dr. Schafer refused to continue refilling Plaintiff's Percocet after he tested positive for illegal drug use, suggesting that Plaintiff did not truly require such strong pain medication. (Tr. 18, 528). Thus, the ALJ supplied ample reasons supported by the evidence in the record for determining that Plaintiff's symptoms were not as severe as he described.

Plaintiff further contends the ALJ overlooked his right shoulder capsulitis, which he claims significantly limits his ability to reach in all directions and prevents him from lifting more than five pounds. (Doc. 16, at 7). Plaintiff again does not cite to objective medical evidence to support this contention. (Doc. 16, at 7). The Commissioner acknowledges there is no dispute Plaintiff's shoulder injury caused significant limitations. (Doc. 18, at 8). However, there is no evidence, apart from Plaintiff's own testimony to which the ALJ assigned limited weight, which demonstrates Plaintiff can only lift five pounds. Moreover, the ALJ accounted for Plaintiff's shoulder capsulitis by providing that Plaintiff could not reach overhead with his right arm, nor climb ropes, ladders, or scaffolds. (Tr. 16).

In sum, the ALJ's determination that Plaintiff's statements regarding the severity of his symptoms were less than credible is supported by substantial evidence. The objective medical evidence does not indicate Plaintiff's symptoms are so severe that he must be limited to

sedentary work. Further, the ALJ properly gave weight to Plaintiff's treating physician who opined that Plaintiff's symptoms were not severe enough to be disabling. Objective medical evidence supports the ALJ's RFC assessment. Therefore, substantial evidence supports the ALJ's determination that Plaintiff could perform light work and the ALJ's decision should be affirmed.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI benefits applied the correct legal standards and is supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

          s/James R. Knepp II
          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).